```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3                          -   -   -

 4   ADIDAS AG and              :      Civil Action
     ADIDAS AMERICA, INC.,      :
 5                              :
                 Plaintiffs,    :
 6                              :
          v.                    :
 7                              :
     UNDER ARMOUR, INC. and     :
 8   MAPMYFITNESS, INC.,        :
                                :
 9              Defendants.     :    No. 14-130(GMS)

10                          -   -   -

11                    Wilmington, Delaware
                   Wednesday, April 15, 2015
12                         11:00 a.m.
                      Telephone Conference
13
                            -   -   -
14
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
15
     APPEARANCES:
16
                     JEREMY A. TIGAN, ESQ.
17                   Morris Nichols Arsht & Tunnell LLP
                             -and-
18                   MITCH STOCKWELL, ESQ., and
                     MATIAS FERRARIO, ESQ. (Winston-Salem, NC)
19                   Kilpatrick Townsend & Stockton LLP
                     (Atlanta, Ga)
20
                                  Counsel for Plaintiffs
21
                     RICHARD L. HORWITZ, ESQ.
22                   Potter Anderson & Corroon LLP
                             -and-
23                   BRIAN E. FERGUSON, ESQ., and
                     ANISH DESAI, ESQ.
24                   Weil, Gotshal & Manges, LLP
                     (Washington, D.C.)
25
                                  Counsel for Defendants
```

:01:43

| | | |
|---|---|---|
| :01:43 | 1 | THE COURT:  Good morning, counsel.  Who is on |
| :01:47 | 2 | the line for Adidas? |
| :01:49 | 3 | MR. TIGAN:  Good morning, Your Honor.  This is |
| :01:51 | 4 | Jeremy Tigan with Morris Nichols on behalf of Adidas. |
| :01:55 | 5 | Joining me today from Kilpatrick Townsend are my colleagues |
| :01:58 | 6 | Mitch Stockwell and Matias Ferrario. |
| :02:01 | 7 | THE COURT:  Good morning. |
| :02:02 | 8 | For Under Armour. |
| :02:04 | 9 | MR. HORWITZ:  Good morning, Your Honor.  It's |
| :02:05 | 10 | Rich Horwitz in Wilmington.  With me from Weil Gotshal, |
| :02:09 | 11 | Brian Ferguson and Anish Desai. |
| :02:12 | 12 | THE COURT:  Good morning. |
| :02:14 | 13 | So, counsel, we have a disagreement over |
| :02:17 | 14 | contentions?  Defendant raises the -- |
| :02:22 | 15 | MR. FERGUSON:  That's correct, Your Honor.  Hi. |
| :02:24 | 16 | Can you hear me okay? |
| :02:25 | 17 | THE COURT:  Yes.  Who is speaking? |
| :02:27 | 18 | MR. FERGUSON:  This is Brian Ferguson with Weil |
| :02:29 | 19 | on behalf of the defendants. |
| :02:30 | 20 | THE COURT:  Okay. |
| :02:32 | 21 | MR. FERGUSON:  That's correct, Your Honor.  The |
| :02:34 | 22 | issue relates to some infringement contentions that |
| :02:37 | 23 | plaintiffs served on February 19th, where the accused |
| :02:43 | 24 | technology is a software application that was managed and |
| :02:49 | 25 | developed by a nonparty to the case, a company called |

:02:53  1  Endomondo, that is based in Denmark.  If Your Honor would

:02:59  2  like to hear argument now, I can cover that.

:03:02  3          THE COURT:  Yes.  Now is as good a time as any.

:03:06  4          MR. FERGUSON:  Thank you.

:03:08  5          So the issue, then -- to give a little bit of

:03:12  6  background first, there are currently 12 patents that are

:03:16  7  being asserted in the case.  Adidas has identified 60

:03:22  8  claims.  The two main defendants are Under Armour and

:03:29  9  MapMyFitness.  MapMyFitness is a wholly-owned subsidiary of

:03:34  10  Under Armour, and it was acquired by Under Armour at the end

:03:39  11  of 2013.

:03:40  12          The technology in this case generally relates to

:03:42  13  software applications that monitor and assist with a

:03:44  14  person's fitness and exercise routines and activities.

:03:48  15          So to give a little quick timeline to put this

:03:51  16  in context, the complaint was filed in February of 2014.

:03:56  17  And then in September of last year, Adidas amended the

:04:00  18  complaint to assert three more patents.  In December of last

:04:04  19  year, we stipulated to an agreement to try to streamline the

:04:07  20  case, where plaintiffs would agree to limit the number of

:04:11  21  claims to 60, and we, in turn, would agree to limit the

:04:16  22  number of prior art references we were asserting.

:04:19  23          And in January, we began the claim construction

:04:21  24  process, picking terms, identifying our constructions.  The

:04:26  25  Markman briefs have all been filed now, and the Markman

| | | |
|---|---|---|
| :04:30 | 1 | hearing is May 6th. |
| :04:31 | 2 | THE COURT:  We are going to talk about that in a |
| :04:33 | 3 | moment. |
| :04:35 | 4 | MR. FERGUSON:  Okay. |
| :04:35 | 5 | At the end of January, Adidas agreed to provide |
| :04:38 | 6 | us with updated infringement contentions by February 2nd, |
| :04:42 | 7 | which they did.  Those did not include the Endomondo |
| :04:48 | 8 | contentions. |
| :04:51 | 9 | Two weeks after that, on February 17th, we |
| :04:54 | 10 | provided our list of the 50 prior art references that we |
| :04:57 | 11 | were going to assert.  And then two days after that, we |
| :05:00 | 12 | received the supplemental infringement contentions directed |
| :05:04 | 13 | to this Endomondo software application. |
| :05:09 | 14 | So what are the specifics? |
| :05:11 | 15 | Endomondo is a software company founded and |
| :05:14 | 16 | based in Denmark.  It has no U.S. presence, no offices or |
| :05:18 | 17 | employees.  It designs and makes available an application |
| :05:24 | 18 | for fitness training. |
| :05:25 | 19 | A user can register for the application either |
| :05:28 | 20 | through Endomondo's website or they can download a mobile |
| :05:32 | 21 | version of the application on the Apple and Android app |
| :05:37 | 22 | stores. |
| :05:38 | 23 | Now, the Endomondo application is not new.  It |
| :05:41 | 24 | is not something that just came out in the last couple |
| :05:44 | 25 | months.  The company was actually founded in 2007, and the |

:05:48   1   application has been available for at least the last five

:05:52   2   years.

:05:53   3           In February of this year, Endomondo was acquired

:05:59   4   by Under Armour.  It's now a wholly-owned subsidiary of

:06:04   5   Under Armour.  But it continues to operate and exist as a

:06:07   6   separate company under the laws of Denmark.  And there is

:06:12   7   now, if you look at the website or you download the

:06:16   8   application, there is an Under Armour logo that is

:06:18   9   associated with the application in addition to the existing

:06:22   10  Endomondo logos and trademarks.  And the Endomondo

:06:26   11  application will work with Under Armour's own fitness

:06:32   12  application.

:06:33   13          But again, the companies are separate in the

:06:35   14  sense that Endomondo continues to operate as it did before

:06:39   15  the acquisition.  And the Endomondo application is what

:06:46   16  plaintiffs are now trying to add to the case in their

:06:50   17  supplemental infringement contentions.

:06:52   18          So there are several reasons why we think

:06:54   19  Endomondo's product should not be a part of this case.  The

:07:01   20  first is, fundamentally, Endomondo is not a party to the

:07:04   21  lawsuit.  If Adidas or plaintiffs are allowed to proceed

:07:08   22  with accusations that the Endomondo products infringe, then

:07:13   23  it's effectively circumventing the Federal Rules by not

:07:17   24  giving Endomondo the opportunity to appear and defend

:07:21   25  itself.

|         |    |                                                                          |
|---------|----|--------------------------------------------------------------------------|
| :07:22  | 1  | This, we think, raises due process concerns,                             |
| :07:24  | 2  | particularly since Adidas has indicated it's going to seek               |
| :07:30  | 3  | an injunction against the accused technology in this case.               |
| :07:34  | 4  | The approach that plaintiffs have taken with                             |
| :07:39  | 5  | respect to Endomondo is inconsistent with the approach that              |
| :07:42  | 6  | they took with respect to MapMyFitness, because MapMyFitness             |
| :07:46  | 7  | is also a subsidiary of Under Armour.  But they have, of                 |
| :07:50  | 8  | course, included MapMyFitness as a defendant in this case.               |
| :07:53  | 9  | We think the reason why they are now trying to                           |
| :07:56  | 10 | bypass doing so with respect to Endomondo is fairly                      |
| :07:59  | 11 | transparent.  The deadline to join parties in this case has             |
| :08:03  | 12 | passed.  And because Endomondo is based in Denmark, it must              |
| :08:07  | 13 | be served process through the Hague Convention.  And we                  |
| :08:11  | 14 | think that Adidas is trying to just skip over these                      |
| :08:14  | 15 | requirements, because it's inconvenient, obviously, to serve             |
| :08:17  | 16 | process that way.  But we don't believe that is a sufficient             |
| :08:22  | 17 | justification for ignoring the Federal Rules.                            |
| :08:24  | 18 | We don't deny that Adidas could bring a new                              |
| :08:26  | 19 | lawsuit against Endomondo, and if it does believe that the               |
| :08:31  | 20 | products infringe, then that's really the course of action              |
| :08:33  | 21 | that should be taken here.                                               |
| :08:36  | 22 | Now, Adidas is going to argue most likely that                           |
| :08:40  | 23 | because Endomondo is now a wholly-owned subsidiary of Under              |
| :08:44  | 24 | Armour, the new infringement contentions are essentially                 |
| :08:47  | 25 | directed towards Under Armour as an indirect infringer.  In              |

:08:52   1   other words, it's encouraging Endomondo to directly

:08:56   2   infringe.

:08:57   3          But that is circular reasoning, because we are

:08:59   4   back to Endomondo being the direct infringer.  And again,

:09:05   5   they are accused of infringement but have not been served

:09:08   6   process and cannot defend themselves in the current lawsuit.

:09:12   7          We also think that theory is inconsistent with

:09:15   8   the Delaware general rule that parent and subsidiary

:09:18   9   corporations are treated as separate legal entities.

:09:23   10          The third reason why we think that the

:09:26   11   contention should be stricken is that there is the practical

:09:30   12   problem of effectively adding a new defendant or a new

:09:34   13   company and a whole new set of products to this case after

:09:39   14   claim construction has taken place, after plaintiffs had

:09:43   15   agreed to provide their infringement contentions, and after

:09:46   16   we had already selected the prior art that we wanted to rely

:09:50   17   on in the case.

:09:52   18          So we think that defendants are going to be

:09:54   19   prejudiced by having to prepare these defenses for an

:09:58   20   entirely new set of products.  We have less than three

:10:01   21   months of fact discovery left.  And when you compare that

:10:04   22   prejudice to the prejudice to plaintiffs, we don't believe

:10:08   23   there really is any prejudice to plaintiffs, because they

:10:11   24   have known about the Endomondo application.  It's just that

:10:14   25   when Under Armour purchased them, they decided that they

:10:19    1    wanted to do something about it.

:10:20    2            What they can do, again, is bring a separate

:10:22    3    lawsuit.

:10:25    4            Again, with respect to what defendants will have

:10:28    5    to do here, we are looking at running the risk of having to

:10:32    6    supplement claim construction, having to supplement our

:10:36    7    invalidity contentions.  That would, of course, delay the

:10:42    8    case.  And we are being prejudiced in the sense that we have

:10:45    9    to prepare for an entirely new set of infringement

:10:51   10    contentions with less than three months left of fact

:10:54   11    discovery.

:10:56   12            The other practical problem, of course, is by

:10:58   13    adding in this entirely new product or set of products, the

:11:01   14    complexity, the discovery complexity in the case increases

:11:04   15    as well, because now we are looking at potentially extensive

:11:08   16    foreign discovery with documents and software and employees

:11:13   17    that are all based in Denmark.

:11:18   18            In similar situations, courts have frequently

:11:22   19    denied attempts to add new products through infringement

:11:25   20    contentions when this type of prejudice would exist.

:11:29   21    Obviously, we didn't exchange case law or anything like

:11:33   22    that, so I don't think it's necessarily fair to cite cases

:11:36   23    on that.  But of course, if Your Honor wants to see those,

:11:39   24    we have them.

:11:39   25            THE COURT:  Okay.

:11:41   1        **MR. FERGUSON:  To summarize, we would request**

:11:43   2   **that the Court strike the Endomondo infringement contentions**

:11:47   3   **because, one, again, they violate Endomondo's due process**

:11:50   4   **rights, two, they ignore the general rule that subsidiaries**

:11:54   5   **and parents are presumptively separate legal entities, and**

:11:59   6   **then, three, they are untimely, because they are going to**

:12:02   7   **prejudice defendants and unnecessarily add to the complexity**

:12:06   8   **of a case that already involves a dozen patents, 60 claims**

:12:11   9   **and numerous accused products and applications.**

:12:15   10       **Unless Your Honor has any questions for me...**

:12:17   11       **THE COURT:  Not at this point.  Thank you, Mr.**

:12:20   12   **Ferguson.**

:12:21   13       **Who is going to react for the plaintiff?**

:12:25   14       **MR. STOCKWELL:  Thank you, Your Honor.  This is**

:12:26   15   **Mitch Stockwell on behalf of plaintiffs Adidas.**

:12:43   16       **I will start by going through a little bit more**

:12:46   17   **on the background, then address the points Mr. Ferguson**

:12:52   18   **made.**

:12:53   19       **So Mr. Ferguson is correct.  Adidas is -- one of**

:12:56   20   **Adidas's ultimate objectives here is seeking injunctive**

:13:02   21   **relief.  Adidas and Under Armour are respectively the No. 2**

:13:05   22   **and No. 3 sports fitness players in the United States**

:13:08   23   **market.**

:13:08   24       **Adidas had invested in what is their set of**

:13:12   25   **applications that do this fitness tracking and sort of**

| | |
|---|---|
| :13:18 | 1 |
| :13:21 | 2 |
| :13:23 | 3 |
| :13:24 | 4 |
| :13:28 | 5 |
| :13:29 | 6 |
| :13:31 | 7 |
| :13:35 | 8 |
| :13:38 | 9 |
| :13:43 | 10 |
| :13:47 | 11 |
| :13:51 | 12 |
| :13:56 | 13 |
| :13:59 | 14 |
| :14:03 | 15 |
| :14:05 | 16 |
| :14:09 | 17 |
| :14:12 | 18 |
| :14:16 | 19 |
| :14:20 | 20 |
| :14:24 | 21 |
| :14:28 | 22 |
| :14:29 | 23 |
| :14:32 | 24 |
| :14:36 | 25 |

wearable technologies through what is called the MyCoach brand of products.

Although there are 12 patents, there are essentially two patent families, the Werner and the Ellis families.

So the specifications are all the same for each of those families.  It's just the claims that differ.

We originally sued Under Armour and MapMyFitness because Under Armour had acquired MapMyFitness as part of what they call their Connected Fitness brand of products. That's things like monitors, heart rate monitors, that connect to these apps.  You can go on a run and the GPS will track your run.

They branded the MapMyFitness material with the Under Armour material.

So what is at issue squarely in the case is Under Armour's Connected Fitness applications and technologies.  That's been at issue from day one.

On February 4th, it was announced that Under Armour had acquired Endomondo, which has a similar -- it's a very similar app to the MapMyFitness app that is already in the case.

We looked at that and realized that they are again putting this as part of their Connected Fitness Experience.  And their CEO has said the objective was to

:14:41  1    combine Endomondo with the MapMyFitness as part of this

:14:45  2    Connected Fitness Experience for the customers in the United

:14:50  3    States.

:14:51  4              So in our view, the Endomondo application is

:14:55  5    part of what is the essence of the dispute here, that the

:14:59  6    Connected Fitness brand and experience, the technologies

:15:02  7    that they are offering in terms of both the apps and the

:15:05  8    devices that the athletes and runners use are already at

:15:09  9    issue in the case.

:15:10  10             Now, it's true that we served many contentions

:15:15  11   on February 4th pursuant to the parties' stipulation.  But

:15:19  12   that was also the day that the announcement was made,

:15:24  13   approximately two weeks later on February 19th.  We then

:15:27  14   served the many contentions identifying the Endomondo

:15:30  15   products.

:15:31  16             It's also true that we have not brought

:15:34  17   Endomondo as a party into the case.  But that is because we

:15:38  18   believe we have evidence that Under Armour is, in fact,

:15:42  19   inducing and contributing to infringement by promoting the

:15:45  20   infringing Endomondo product.

:15:48  21             The Court can appreciate, when two competitors

:15:50  22   like Under Armour and Adidas are fighting for the second and

:15:54  23   third top spots in the United States, it is substantially

:15:57  24   more of a threat to Adidas from a business perspective when

:16:01  25   Under Armour acquires Endomondo and then continues promoting

:16:05   1   as part of these connective fitness apps, which is why we

:16:08   2   have added those to the case.

:16:10   3          Now, they argue first that, well, Endomondo is a

:16:15   4   separate party, and Delaware law should treat them as a

:16:19   5   separate party.  We agree with that, which is why we have

:16:22   6   alleged that Under Armour is itself liable for inducing and

:16:27   7   contributing to infringement by promoting the Endomondo

:16:32   8   apps.  I think counsel acknowledged that.  We are in

:16:36   9   agreement, those are different companies.  Endomondo is a

:16:39   10  direct infringer, and Under Armour is an indirect infringer.

:16:42   11  We have alleged that in our supplementation.

:16:45   12         But in addition, Your Honor, what happened after

:16:48   13  the MapMyFitness acquisition was Under Armour then

:16:51   14  re-branded all of those MapMyFitness apps and connected them

:16:56   15  to this Connected Experience suite of applications.  And in

:17:01   16  fact, they have done the same now.

:17:03   17         If you go to their website, they have the UA

:17:06   18  record suite of applications, and under that record suite of

:17:10   19  applications is both the Endomondo application and the

:17:13   20  MapMyFitness application.

:17:15   21         So we also think that Under Armour itself is a

:17:18   22  direct infringer from offering those applications.

:17:21   23         So is it the situation where Endomondo itself

:17:26   24  could also be sued?  Yes.  Is it necessary for them to be a

:17:30   25  party for us to hold Under Armour accountable?  I would say

:17:35   1   not, particularly given both the inducement and the direct

:17:38   2   infringement issues.

:17:39   3          The second point counsel made was the practical

:17:42   4   problem of adding new products.  There were four months of

:17:46   5   discovery left after our amendment to the contentions that

:17:53   6   were served February 19th.  We purposely did not allege any

:17:58   7   additional claims were infringed by the Endomondo

:18:02   8   applications.  Those are very similar applications to the

:18:05   9   MapMyFitness applications.  They do add some additional

:18:08   10  features.

:18:09   11         It could have been the situation where we could

:18:11   12  have added claims, but we recognize that the parties were in

:18:14   13  the midst of claim construction, and that Under Armour had

:18:18   14  already identified prior art with respect to those claims.

:18:20   15  And we recognize that we needed to do something to ensure

:18:23   16  that any prejudice to them by adding those contentions was

:18:27   17  minimized.  So we restricted the allegations just to the

:18:31   18  claims that were already identified in the case.

:18:34   19         So we think the prejudice that they have

:18:37   20  identified there is frankly speculative and nonexistent.

:18:40   21  They have already identified the invalidity references.  We

:18:44   22  have already addressed the claim construction terms.  And

:18:48   23  the applications are so similar they have not been able to

:18:51   24  identify any additional terms that would need to be

:18:53   25  construed based on that addition.

:18:59    1          Finally, with respect to the potentially

:19:01    2    expensive foreign discovery with employees based in Denmark,

:19:06    3    I think counsel has neglected to mention that Endomondo has

:19:11    4    a subsidiary in California, and that the personnel at Under

:19:16    5    Armour that are largely responsible for this connected suite

:19:19    6    of products are the same personnel who are going to be

:19:24    7    knowledgeable about Endomondo apps and integrating them into

:19:29    8    this Endomondo experience that is being offered to

:19:31    9    customers.

:19:32   10          So, yes, it is possible there will be additional

:19:34   11    witnesses.  But I don't think there will be the number of

:19:37   12    witnesses that -- we haven't heard any specifics about the

:19:39   13    number of witnesses, and we still have several months in the

:19:42   14    discovery period left.

:19:43   15          So from our point of view, the prejudice is

:19:46   16    fairly minimal.  We certainly acted diligently in bringing

:19:51   17    this issue to the other side and amending our contentions.

:19:57   18    We have acted in a way to ensure any prejudice is minimal.

:20:00   19    We don't see this as disrupting the trial.  And certainly,

:20:03   20    there has been no bad faith here.

:20:06   21          The last factor that the courts identify is the

:20:10   22    importance of the evidence to the proffering party.

:20:12   23    Certainly, this is, as I said, Your Honor, the Connected

:20:17   24    Fitness applications that are already in the case, I mean,

:20:19   25    the parties are going to be disputing those issues anyway.

:20:24  1   What counsel seems to be suggesting is, well, let's just

:20:28  2   have another lawsuit, another lawsuit involving Under

:20:33  3   Armour, Adidas and Endomondo, in order to address

:20:35  4   essentially the same issues, the Connected Fitness

:20:39  5   Experience, the only difference being it would be the

:20:41  6   Endomondo applications rather than the MapMyFitness

:20:46  7   application.  Frankly, I think the prejudice or surprise to

:20:49  8   them in having another lawsuit to deal with as opposed to

:20:52  9   addressing this additional application in this lawsuit is

:20:56  10  far outweighed.

:20:58  11          For those reasons, we think the amendment was

:21:01  12  proper.  We think there is plenty of time left in the

:21:03  13  discovery period.  We certainly acted in a way to minimize

:21:06  14  any prejudice.

:21:07  15          THE COURT:  Mr. Ferguson, your reaction to what

:21:09  16  you have heard.

:21:10  17          MR. FERGUSON:  Thank you, Your Honor.

:21:12  18          First of all, I want to address what might be a

:21:15  19  misconception about the products.

:21:20  20          The MapMyFitness applications and the Endomondo

:21:24  21  applications are similar only in the respect that they are

:21:27  22  both fitness applications.  But that's like saying Apple IOS

:21:33  23  and Google Android are similar just because they are both

:21:36  24  operating systems.

:21:38  25          The real functionality, of course, comes from

:21:40    1   the source code that drives these.  And Endomondo was

:21:44    2   developed completely differently from MapMyFitness.

:21:48    3          So it really is a situation, an entirely new

:21:52    4   product set that's being added into the case.  That's what

:21:56    5   develops into the prejudice that defendants will face,

:21:59    6   because now, with less than three months of fact discovery

:22:02    7   left, we need to scramble to look at this product and try to

:22:09    8   develop noninfringement defenses.  And it may very well be

:22:14    9   as a result of that that the claim construction process will

:22:17   10   be disrupted because we haven't looked at whether or not

:22:22   11   there would need to be new claim terms identified for

:22:27   12   potential construction.

:22:28   13          The other issue in terms of the prejudice to us

:22:30   14   is that we selected the prior art that we are going to rely

:22:35   15   on without knowing that the Endomondo application was at

:22:38   16   issue.  And, of course, many times, based on what the

:22:41   17   infringement contentions are like, the prior art we may have

:22:44   18   relied on would be different or we would at least need to

:22:48   19   add prior art as a result of Adidas reading onto the

:22:52   20   Endomondo application in a way that already exists in the

:22:55   21   prior art.  But, of course, we didn't know that at the time

:22:57   22   that we selected our references.

:23:00   23          Then, the issue -- again, I heard counsel agree

:23:05   24   that Endomondo would be the direct infringer.  But he didn't

:23:08   25   address the real due process concerns that are faced by

:23:14     1    having Endomondo, the direct infringer, not be a participant

:23:17     2    in the lawsuit and not have the Federal Rules complied with

:23:22     3    respect to their ability to appear in the case and defend

:23:27     4    themselves.

:23:28     5         So again, given that it is possible for them to

:23:32     6    bring a new case, we think that the Federal Rules should be

:23:35     7    followed and they should, if they think that Endomondo --

:23:40     8    the application infringes, they should look into bringing a

:23:43     9    separate lawsuit.

:23:45    10         THE COURT:  All right.  Thank you, gentlemen.

:23:49    11         Mr. Stockwell, I have to say that, in spite of

:23:55    12    your best efforts, and I believe them to be in earnest, to

:24:00    13    minimize any prejudice or inconvenience to the other side,

:24:08    14    that's sort of beside the point, it seems to me.  I know we

:24:12    15    have discussed practical concerns and considerations.  But I

:24:17    16    don't think we can foist the practical over the principled

:24:24    17    concern that Mr. Ferguson has raised.  That is one of due

:24:26    18    process.

:24:26    19         It seems to me that while the Federal Rules of

:24:31    20    Civil Procedure and even the rules of the corporations'

:24:42    21    precedent in Delaware, not the actual cases, but just the

:24:49    22    principle that these are separate entities, a concept with

:24:54    23    which I think you concur, this may be somewhat inconvenient

:25:00    24    when it comes to what's going on out there in the

:25:04    25    marketplace.  That is a hammer-and-tong competition.

:25:09   1   Nonetheless, you find yourself, both entities, in a place

:25:12   2   where these rules matter.

:25:16   3           And I for one am persuaded that your reasoning

:25:20   4   is rather circular, and you are asking me to really torture

:25:25   5   the concept of inducement and direct infringement in a way,

:25:29   6   in a pretzel-like way that is just very uncomfortable for me

:25:34   7   to consider doing.

:25:38   8           You are going to have to file another lawsuit if

:25:41   9   you want to exercise your legitimate right to enforce your

:25:49   10   franchise against Endomondo.  You are going to have to sue

:25:54   11   them.  You can't bring them in the back door like this.

:25:56   12   They have a right to counsel of their own choosing.  You

:25:59   13   just can't do it.  I won't permit it.

:26:02   14           Therefore, I am going to accede to the argument

:26:05   15   and the request made by Under Armour.

:26:11   16           MR. STOCKWELL:  Your Honor, I certainly

:26:12   17   understand your ruling, and understand that concern.  I

:26:17   18   would ask that you make clear that's without prejudice.

:26:22   19           The argument counsel has made is we are

:26:25   20   certainly entitled to file another lawsuit.  That is

:26:27   21   something we will have to look at.  My view was this was the

:26:31   22   more practical, pragmatic approach.

:26:34   23           THE COURT:  As I just said, Mr. Stockwell, I

:26:36   24   appreciate your point.  I do.  I think, if I were in your

:26:42   25   shoes I would look at it likely the same way.  Certainly,

|         |    |                                                                          |
|---------|----|--------------------------------------------------------------------------|
| :26:48  | 1  | when having to talk with your client and talk about things               |
| :26:53  | 2  | like the expense that you mentioned of litigating these                   |
| :27:00  | 3  | matters in foreign lands, all of that, I get your point.                  |
| :27:05  | 4  | But when you say without prejudice, what are you                          |
| :27:08  | 5  | asking?                                                                   |
| :27:08  | 6  | MR. STOCKWELL:  Well, Your Honor, if you --                               |
| :27:12  | 7  | counsel said -- we didn't really exchange case law, but I                 |
| :27:16  | 8  | think both of us are familiar with it -- there are                        |
| :27:18  | 9  | situations where somebody moves to amend --                               |
| :27:22  | 10 | THE COURT:  This argument is done.  Mr.                                   |
| :27:25  | 11 | Stockwell, hear me clearly.  This argument is done.  The                  |
| :27:33  | 12 | ruling was made with prejudice to your position.  Okay?  I                |
| :27:38  | 13 | won't hear it again.                                                      |
| :27:39  | 14 | MR. STOCKWELL:  And I totally understand that,                            |
| :27:41  | 15 | Your Honor.  I am not intending to raise that again in front              |
| :27:45  | 16 | of you.                                                                   |
| :27:45  | 17 | I just want to make clear, or understand that                            |
| :27:50  | 18 | that certainly doesn't preclude us from doing what Your                   |
| :27:53  | 19 | Honor suggested, which is to bring a separate lawsuit.                    |
| :27:55  | 20 | THE COURT:  Absolutely not.  I wouldn't in any                            |
| :27:58  | 21 | way attempt to interfere.  That is your right to do that.  I              |
| :28:01  | 22 | have no power to preclude that course of action.                          |
| :28:04  | 23 | What I do have the power to do, and I have just                           |
| :28:06  | 24 | exercised it, is to prevent the infliction of what I believe             |
| :28:10  | 25 | would be an unfairness, an unwarranted unfairness, for lack               |

| | | |
|---|---|---|
| :28:20 | 1 | of more articulate and eloquent language, upon the |
| :28:24 | 2 | defendant.  I think it would be violate Endomondo's due |
| :28:27 | 3 | process rights.  While I thoroughly, I think, appreciate the |
| :28:31 | 4 | practical arguments, pro and con, I am not going to allow |
| :28:38 | 5 | that tail to wag the due process dog, if you will.  Okay? |
| :28:43 | 6 | MR. STOCKWELL:  Yes, sir.  Your Honor, I am very |
| :28:45 | 7 | much on board with -- you will never hear from me again on |
| :28:49 | 8 | this.  Thank you so much for also making yourself available. |
| :28:53 | 9 | That has saved both parties time and expense and otherwise |
| :28:55 | 10 | briefing the issue. |
| :28:56 | 11 | THE COURT:  No.  That's great.  I appreciate |
| :28:58 | 12 | your, even as you have lost an important argument, being |
| :29:03 | 13 | gracious about it. |
| :29:05 | 14 | Counsel, unfortunately, I am going to have to |
| :29:07 | 15 | adjust the Markman date.  I am going to, it looks like, at |
| :29:14 | 16 | this time, be on trial in a patent jury on May the 6th.  I |
| :29:25 | 17 | want you to pencil in May the 13th at 2:00 in the afternoon |
| :29:31 | 18 | here in Wilmington as the alternate date. |
| :29:34 | 19 | I would suggest that you make, continue to make |
| :29:38 | 20 | plans for the possibility of being here on the 6th.  As you |
| :29:43 | 21 | know, things change in the world of complex civil |
| :29:49 | 22 | litigation.  It could come to pass, even at this late date, |
| :29:53 | 23 | that the Zerto case could for some reason go away.  But at |
| :29:58 | 24 | this point it looks like we are headed full bore to a |
| :30:02 | 25 | ten-day jury trial.  Okay? |

:30:07     1             MR. FERGUSON: Thank you, Your Honor. We will

:30:08     2   do that.

:30:10     3             MR. STOCKWELL: That is no problem for Adidas,

:30:12     4   Your Honor.

:30:12     5             Just by way of purely logistics, because I do

:30:15     6   have some folks from Germany attending -- planning on

:30:19     7   attending the Markman hearing, may we try to check in a week

:30:22     8   or so before the hearing, before the original hearing date

:30:25     9   just to find out what your clerk, find out what the schedule

:30:29    10   is?

:30:29    11             THE COURT: I will give you leave to call

:30:34    12   Cynthia Tyer-Daly.

:30:41    13              (Phone number given.)

:30:44    14             THE COURT: You should definitely preface your

:30:46    15   remarks by saying that you are calling at the direction of

:30:49    16   the Judge, because she won't take too kindly otherwise to

:30:53    17   receiving the call.

:30:56    18             Okay? I will alert her to expect your call, and

:31:01    19   that certainly makes sense. I understand that's a

:31:05    20   challenge. That is a logistical challenge, having people

:31:08    21   coming from Germany.

:31:13    22             Anything else we need to talk about today,

:31:15    23   gentlemen?

:31:18    24             MR. FERGUSON: Nothing from defendants' side,

:31:19    25   Your Honor. Thank you very much for your time today.

:31:21  1                    THE COURT:  Okay.  Take care.  Have a good

:31:24  2          weekend.

:31:24  3                        (Conference concluded at 10:31 a.m.)

:31:24  4                                  -   -   -

:31:24  5          Reporter:   Kevin Maurer