IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ADIDAS AG and ADIDAS AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNDER ARMOUR, INC. and<br>MAPMYFITNESS, INC.,<br><br>Defendants, | Civil Action No. 14-130-GMS |

**ORDER CONSTRUING THE TERMS OF U.S. PATENT NOS.
7,957,752; 8,244,226; 8,068,858; 7,905,815; 7,931,562; 8,652,009; 8,725,276; 8,579,767;
8,721,502**

The court having considered the submissions of the parties and having heard oral argument on the matter—IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent Nos. 7,957,752 ("the '752 Patent"); 8,244,226 ("the '226 Patent"); 8,068,858 ("the '858 Patent"); 7,905,815 ("the '815 Patent"); 7,931,562 ("the '562 Patent"); 8,652,009 ("the '009 Patent"); 8,725,276 ("the '276 Patent"); 8,579,767 ("the '767 Patent"); 8,721,502 ("the '502 Patent"):

The '752 Patent

1. The term "at least one of a set including" is construed to mean "a set including at least one of."[1]

---

[1] The parties' dispute focuses primarily on the grammar of the claims, with each side accusing the other of improperly rewriting the claim language. But the court agrees that the claim phrase, in isolation, possibly permits either viewpoint. As such, construction is necessary. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

The disputed phrase is used several times in the patent, but its first use in Claim 1 is illustrative: "serving a graphical representation of the route to a user device in association with a toolset *including at least one of a set*

2. The term "rating tool" is construed to mean "a tool allowing a user to assign a user rating."[2]

3. The term "user rating" is construed to mean "relative rank assigned by a user."[3]

---

*including* an annotation tool, a rating tool, and a review tool." '752 Patent, claim 1. Depending on how this is read, the claim may be interpreted as "at least one set including" (defendants' view), versus "a set including at least one of" (plaintiffs' view). Either interpretation does some violence to the original language, but such a result is unavoidable in light of the awkward claim drafting. The court finds that the plaintiffs' interpretation is most consistent with the remainder of the claim language, as well as the teachings of the specification. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1374 (Fed. Cir. 2014) ("Claim language must be viewed in light of the specification, which is 'the single best guide to the meaning of a disputed term.'" (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir.2005))).

As can be seen from the parties' proposals, the dispute is essentially over whether the claims require at least one *set* or at least one *component* within the set. Focusing on the excerpted claim language above, the court finds that only the plaintiffs' view lends meaning to claim. Claim 1 already notes that there must be a "toolset" present; thus, interpreting "at least one of" to modify "set" adds nothing new to the claim. Indeed, the word "set" serves very little purpose in the claims other than signaling that the components are somehow associated with one another. In contrast, reading "at least one of" as modifying the tools within the set does add new, meaningful information. Such a result is preferred. *See Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014) ("It is the usual (though not invariable) rule that, in patent claims as elsewhere, the construction of a clause as a whole requires construction of the parts, with meaning to be given to each part so as to avoid rendering any part superfluous.").

The specification supports this view. The defendants can point to no disclosure in the written description *requiring* all of the components (*i.e.*, annotation tool, rating tool, and review tool). Rather, the defendants contend that the only embodiment disclosed does have each of the components. *See* '752 Patent, fig. 5B. Even if the court accepts that Figure 5B illustrates the only relevant embodiment, courts "have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. Moreover, the specification language used to describe Figure 5B makes clear that it is only an "exemplary" embodiment, not meant to be limiting. *See, e.g.*, '752 Patent, col. 2 l. 37.

[2] "Rating tool" appears in exemplary Claim 1, as one of the possible tools of the "toolset" included with the "user device." '752 Patent, claim 1. The plaintiffs argues no construction is needed, whereas the defendants maintain that a rating tool allows *a user* to assign a rating. The court agrees with the defendants. The claims provide all the evidence necessary to construe this term. The rating tool is part of the *user* device—logically, it makes sense that the rating tool is to be used by the user. Moreover, dependent claims 16 and 17 claim the "method of claim 1, wherein the rating tool is adapted to *allow the user*" to assign particular types of ratings. '752 Patent, claims 16 & 17 (emphasis added). Thus, it is clear that the rating tool, as part of the user device, allows a user specifically to assign user ratings. The plaintiffs can point to no evidence that the rating tool can be used in any other manner. The court, however, specifies that the rating tool allows the user to assign a *user rating*. As notes 3–5, *infra*, make clear, the term "rating" takes on different meaning in different contexts.

[3] The court's construction contains two added limitations. The first—that the rating is assigned to a route by a user—flows naturally from the previous term, "rating tool." *See supra* note 2. The "user rating" is the "route-related information" that results from using the rating tool. '752 Patent, claim 1. The plaintiffs do not contest this limitation. (D.I. 159 at 16.)

2

The '226 Patent

4. The term "individual rating" is construed to mean "evaluative assessment assigned to a route by a user."[4]

5. The term "route rating" is construed to mean "evaluative assessment assigned to a route."[5]

---

The second limitation stems from disagreement over the meaning of "rating." The court agrees with the defendants that "user rating" is unquestionably distinguished from "user review" in the claims. *See, e.g.*, '752 Patent, claim 1. In the context of the term "user rating," "rating" is construed to mean a "relative rank," in order to make clear that it differs from a "user *review*" (which the court has not been asked to construe). "Relative rank" is among the accepted dictionary definitions for rating, and the court finds it applicable in this instance. The court emphasizes that this construction is only in the context of the '752 Patent's use of "user rating." As explained *infra*, the use of "rating" in the related '226 Patent differs. The court is convinced that the differing usage across both patents is sufficient to overcome the presumption that "the same claim term in the same patent or related patents carries the same construed meaning." *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).
    Figure 5B and its accompanying description in the specification confirm the court's construction:
> . GUI window 440 preferably includes a GUI component that permits the user to review and/or rate the route. For example, in the exemplary embodiment, GUI window 440 contains a second text box 492 in which the user can compose a review of the route and a ratings section 494 in which the user can award the route between one and four "stars."

'752 Patent, col. 15 ll. 8–14 & fig. 5B. In the context of the '226 Patent's claim terms, "rating" has a different usage.

[4] The plaintiffs concede that an "individual rating" is provided "by the user." (D.I. 159 at 16.) Unlike the claims of the '752 Patent, however, the '226 Patent does not draw the clear distinction between *rating* and *review* in this context. The claims describe a number of data from which the individual rating can be derived: "the individual rating is based on the second user's assessment of the quality of the route" (claim 33); "the individual rating is based on the second user's athletic performance while traversing the route" (claim 34); "individual rating is determined based on feedback from one or more sensors" (claim 35). Thus, the individual rating need not be limited to a user's relative rank of a route. It may take the form of a relative rank, but it may also include a review—the '226 Patent does not limit the term as narrowly the '752 Patent.
    There is additional support for this broader characterization. The route rating—which is "based upon at least one individual rating"—can incorporate "written feedback." '226 Patent, claims 1 & 16. By extension, the individual writing must also be capable of incorporating written feedback. Moreover, Figure 4F shows a route rating and the number of *reviews* from which it was determined. '226 Patent, col. 12 ll. 47 – 49 & fig. 4F. Knowing from claim 1 that a route rating is based on individual ratings, the court is lead to the conclusion that the '226 Patent interchanged "review" for "individual rating" in Figure 4F.
    Construing an "individual rating" the same as a "user rating" would seem to restrict the broad usage of the term in the '226 Patent claims and specification. The court's construction offers an alternative accepted plain meaning definition of rating that accounts for this broader usage. As indicated *supra* note 3, the court finds that the presumption that the same claim term should carry the same construed meaning across related patents has been rebutted. *See Omega Eng'g*, 334 F.3d at 1334.

[5] The court's reasoning largely tracks that offered for "individual rating." *Supra* note 4. The parties agree that a "route rating" need not be assigned by a user, but may in fact be a composite of "individual ratings." '226 Patent, claim 1. Thus, the entity assigning/creating the route rating is not material. Rather, the parties dispute the type of information contained in a route rating. The intrinsic evidence reveals that "route rating" encompasses

The '858 Patent

6. The term "route path" is construed to mean "geographical representation of the route."[6]

7. The term "while the user is engaged in the physical activity" is construed to have its plain and ordinary meaning.[7]

The '815 Patent

8. The court declines to construe the term "base station" at this time.[8]

---

more than "user rating." *See supra* note 3. Claim 16, for example, claims "[t]he method of claim 1, wherein the *route rating includes written feedback*. '226 Patent, claim 16 (emphasis added). Moreover, Figure 4F and its description in the specification are illuminating:
> As ... shown in FIG. 4F, window 380 ... includes a *rating of the route, which in this case includes between one and four "stars" and an indication of a number of reviews*. In addition, window 380 *may optionally include a number of written reviews*, for example, displayed within text box 402.

The comma structure of the first sentence shows the rating of the route (i.e., route rating) includes both the star rating and the review count. Thus, as explained *supra* note 4, the '226 Patent's usage of "rating" indicates a broader conception than that of the '752 Patent.

[6] The court's construction is taken from a disclosure in the specification: "[T]he training journal entry presented within GUI window 440 includes a route map 442 having terminal points 444 a-b and *a route path 446 showing the geographical path traversed by the route*." '858 Patent, col. 14 ll. 6–9. The disclosure notes a subtle distinction between the route and the route path.
The defendants present compelling arguments for adding a limitation requiring the route path to be "predetermined," in order to allow comparison between a user's location and the route path. *See, e.g.,* '858 Patent, claim 1 ("[T]he visual display further includes an indication of the first user's location with respect to the route path."). Ultimately, however, the court is not persuaded that the intrinsic evidence clearly supports the importation of this limitation. *See Omega Eng'g*, 334 F.3d at 1329 ("It is axiomatic that, unless *expressly compelled* by the intrinsic evidence, courts must avoid the addition of a novel limitation." (emphasis added)). The defendants' second proposed limitation—that the route path be represented by a "series of geographic points"—finds even less support in the intrinsic record.

[7] The plaintiffs seek to substitute the claim term with the phrase "in substantially real time," apparently to give meaning to the claimed invention. The court is not convinced that such a substitution is appropriate. The claims, the Abstract, and the Summary of the Invention for the '858 Patent all use the claim term repeatedly. While "in substantially real time" does appear in the body of the common specification, nowhere does the '858 Patent expressly indicate that the two phrases are interchangeable. The court construes claim terms to have their plain and ordinary meaning "unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). The patentee did not do so here. Although the plaintiffs may believe their proposed construction better captures the patentees' intent, ultimately the language actually used in the claims is most persuasive. *See SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("The written description ... is not a substitute for, nor can it be used to rewrite, the chosen claim language."); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007). The court refuses to accept a revision of the claims, simply for the purpose of aiding litigation efforts. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed. Cir. 1994) ("[Plaintiff] cannot, in effect, rewrite its patent claims to suit its needs in this litigation.").

The '562 Patent

9. The term "separate input device" (claim 1) is construed to mean "an input device that is a physically independent unit from the position monitoring device."[9]

10. The term "separate device" (claim 10) is construed to mean "an input device that is a physically independent unit from the device collecting position or speed information."[10]

The '562, '009 & '276 Patents

11. The terms "position data" and "position information" are construed to mean "data relating to geographic position" and "information relating to geographic position," respectively.[11]

---

[8] "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. As explained during the hearing, the court is convinced that extrinsic evidence is necessary to determine how one skilled in the art would understand the term "base station." (D.I. 159 at 71–73.) The court will hear testimony on this issue at trial.

[9] The court's construction clarifies a disagreement between the parties as to what components of the system need to be "separate," *i.e.*, physically independent. The structure of claim 1 provides all the necessary evidence: "A modular mobile position logging system configured to be worn by a user comprising: (a) a position monitoring device, (b) a separate input device for creating annotations . . . ." '562 Patent, claim 1. The plaintiffs purport to urge a "plain and ordinary" construction, yet their reasoning indicates that they actually seek to argue a position that is at odds with the plain English reading—that the "separate input device" limitation is satisfied so long as it is separate from *any* other single component. But the elements of claim 1 are to be read in their natural order, and the sequence from (a) to (b) illustrates that the input device is separate from the position monitoring device.

[10] The court's reasoning mirrors that of note 9. Claim 10 claims "[a] method of collecting mobile position from a user comprising: (a) collecting position or speed information in a device worn or carried by the user, (b) collecting user entered annotations from a separate device worn or carried by the user. . . ." '562 Patent, claim 10. Claim 10 is even clearer than claim 1, as there are only two possible devices in the claim elements.

[11] The defendants seek construction of these terms to clarify that "position," as used throughout the '562, '009, and '276 Patents, refers only to "geographic position," and not other possible understandings relating to a person's orientation or physical form. The court agrees that such a construction is warranted; a plain and ordinary meaning construction alone would be insufficient.
 The claims provide considerable evidence supporting the defendants' view. Claim 20 of the '009 Patent claims a method "wherein the position data is received with a global positioning satellite receiver." '009 Patent, claim 20. *Global* positioning makes clear that geographic position is what is recorded.
 The claims of the '562 Patent refer to a "position monitor" that gathers both position *and speed* data/information. '562 Patent, claims 1–4, 10. Basic physics teaches that speed and position (in the locational sense) are closely linked, and that speed can be calculated as the distance between two positions, per unit time. As such, these claims also support the defendants' geographic position proposal.

5

The '767 & '502 Patents

12. The term "positions points" is construed to mean "geographic position points."[12]

13. The term "during the physical activity" is construed to have its plain and ordinary meaning.[13]

Dated: June _15_, 2015

UNITED STATES DISTRICT JUDGE

---

The remainder of the intrinsic record is in accord. Indeed, the common specification uses the term "form" specifically when discussing the user's body orientation, rather than "position." *See, e.g.*, '562 Patent, col. 11 ll. 14. The specification uses "position" consistently to refer to geographic position or location. *See id.* col. 40 ll.38–44 (distinguishing "position" data from other metrics like speed, elevation, and direction).

The plaintiffs point to claim 1 of the '276 Patent as evidence that the defendants' proposal creates a redundancy: "A method for monitoring an athletic activity, comprising: receiving *position data relating to the geographical positions* of an individual during the athletic activity with a global positioning satellite receiver...." '276 Patent, claim 1. While it is true that substituting the defendants' proposal perhaps leads to some awkward and even redundant phrasing, the court is not convinced that it is reason enough to reject the well-supported construction. *See 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1296 (Fed. Cir. 2012) ("[Plaintiff] has not cited, and we have not discovered, any authority for the proposition that construction of a particular claim term may not incorporate claim language circumscribing the meaning of the term.").

[12] The court's construction stems from its previous construction, *supra* note 11, only clarifying that "position" refers to "geographic position." The term "point" requires no construction. The court does not see support for the defendants' additional proposed limitation requiring that location be defined in terms of coordinates. The intrinsic record makes no mention of coordinates. Although, practically, a point (or location) is often associated with geographic coordinates, the court does consider it necessary to make it a limitation of the claims. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

[13] The plaintiffs again present the court with arguments that a term should be construed to mean "in substantially real time." For the same reasons outlined in note 7, the court declines to do so. The plaintiffs' position is even more untenable in this context—the phrase "in substantially real time" never appears in the claims or the common specification. The plaintiffs' proposal would "impermissibly rewrite[] the patent[s'] claims." *See GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1317 (Fed. Cir. 2014).

6