IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADIDAS AG and ADIDAS AMERICA, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNDER ARMOUR, INC. and ) <br> MAPMYFITNESS, INC., ) <br> ) <br> Defendants, ) <br> ) | Civil Action No. 14-130-GMS |

## **MEMORANDUM**

### I. INTRODUCTION

Plaintiff adidas AG ("adidas AG") initiated this patent infringement lawsuit against defendants Under Armour, Inc. and MapMyFitness, Inc. (collectively, "the Defendants") on February 2, 2014. (D.I. 1.) On March 14, 2014, adidas AG filed its First Amended Complaint, adding adidas America, Inc. ("adidas America") as a plaintiff (collectively, "the Plaintiffs"). (D.I. 10.)[1] Presently before the court are (1) the Defendants' motion to dismiss adidas America for lack for subject matter jurisdiction (D.I. 46); and (2) the Plaintiffs' Notice and Motion for Application of German and Dutch Law. (D.I. 50.) For the following reasons, the court will grants the Defendants' motion to dismiss and deny the Plaintiffs' motion to apply foreign law as moot.

---

[1] The Plaintiffs filed a Second Amended Complaint on September 11, 2014, asserting additional patents. (D.I. 44.) The asserted patents are as follows: U.S. Patent Nos. 7,292,867; 7,805,149; 7,941,160; 7,957,752; 8,068,858; 8,244,226; 7,905,815; 7,931,562; 8,092,345; 8,579,767; 8,725,276; 8,721,502; 8,652,009.

## II. BACKGROUND

This case involves a complex series of contracts between adidas AG and its various subsidiaries. The parties dispute the interpretation and practical import of these agreements, so the court will only lay out generally what the agreements purport to do.

adidas AG is a German company and the undisputed legal owner of each of the asserted patents in this suit. (D.I. 44, ¶¶ 2, 11–23.) adidas America is an American subsidiary of American AG. (*Id.* ¶ 3.) The Defendants challenge the Plaintiffs' assertion that adidas America is the exclusive licensee for the asserted patents within the United States. (*Id.* ¶ 24.)

In 2009, adidas AG entered into a licensing agreement ("Licensing Agreement") with adidas International Trading B.V. ("adidas IT"). (D.I. 47, Ex. 7.) adidas IT is not a party to this lawsuit. The Licensing Agreement conferred upon adidas IT a "non-exclusive right and licence to use the KNOW HOW to manufacture or have manufactured LICENSED PRODUCTS anywhere in the world." (*Id.* § 2.1.) KNOW HOW was defined as:

> [A]ny inventions, technical knowledge, methods, manufacturing secrets, designs, specifications, drawings, marketing plans, business plans, manuals, and the like, owned by or proprietary to or acquired during the term of this AGREEMENT by [adidas AG] . . . which [adidas AG] considers reasonably necessary to the manufacture and distribution of LICENSED PRODUCTS and which shall include, without limitation the PATENTS.

(*Id.* § 1.11.) The PATENTS referenced in this definition were not identified specifically. Rather, "'PATENTS' means those utility and design patents and patent applications owned by [adidas AG] . . . [covering] the inventions and designs as listed in Exhibit B. . . ." (*Id.* § 1.11.) Among the products listed in Exhibit B is the adidas miCoach product. (*Id.* Ex. B.)

In 2011, adidas IT entered into a distribution agreement ("Distribution Agreement") with adidas America. (D.I. 47, Ex. 8.) Under the Distribution Agreement, adidas IT appointed adidas

America "to act as [the] exclusive distributor for the sale" of adidas-brand products in the United States. (*Id.* § 2.1, App. A.) The Distribution Agreement discussed adidas America's authority to enforce adidas-brand trademarks. (*Id.* § 13.) There is no mention of patents held by adidas.

On March 11, 2014, after adidas AG initiated this action but prior to adidas America joining suit, all three entities—adidas AG, adidas IT, and adidas America—entered into a Restatement and Clarification Agreement ("Clarification Agreement"). (D.I. 47, Ex. 9.) The Clarification Agreement purported to make clear that adidas America was an exclusive licensee of "adidas brand intellectual property":

> For the avoidance of doubt, the parties agree and hereby restate and clarify that adidas AG and adidas [IT], by and through the License Agreement and the Distribution Agreement, have granted adidas America[], as the exclusive distributor of adidas products in the United States . . . , an exclusive license to all adidas brand intellectual property (which includes all . . . Patents identified in [Exhibit B] of the License Agreement . . . .
> 
> . . . .
> 
> To the extent that there is any ambiguity arising out of the language in the various Agreements regarding adidas America['s] exclusive license, the Parties agree that they intended and hereby confer (retroactively, if necessary) an exclusive license to adidas America[] to the adidas AG intellectual property (which includes any Mark or Patent as those terms are defined in the License Agreement that relates to a Licensed Product) . . . .

(*Id.* §§ 2.1, 2.4.)

Finally, on June 20, 2014, adidas IT, adidas America, and Reebok International Ltd. ("Reebok") executed yet another distribution agreement ("Reebok Agreement"). (D.I. 57, Ex. A.) The Reebok Agreement expressly terminated the effectiveness of the original Distribution Agreement and appointed both adidas America and Reebok as joint exclusive distributors of adidas-brand products. (*Id.* at 2; § 2.1.)

## III. STANDARD OF REVIEW

The court lacks subject matter jurisdiction over and must dismiss a party that does not possess standing. *See* Fed. R. Civ. P. 12(b)(1), (h)(3); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."). Motions to dismiss brought under Rule 12(b)(1) may present facial or factual attacks on jurisdiction:

> [W]e must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack ... offer[s] similar safeguards to the plaintiff [as Rule 12(b)(6) or Rule 56]: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under [those Rules]. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, *no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims*.

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (emphasis added); *see also Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). The district court must first determine whether the defendant's motion presents a facial or factual challenge "because that distinction determines how the pleading must be reviewed." *Aichele*, 757 F.3d at 357. The plaintiff bears the burden of establishing that jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)

## IV. DISCUSSION

The Defendants make facial and factual challenges to the adidas America's standing to participate in this lawsuit as an exclusive licensee of the patents-in-suit.

"A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). By statute, however, this exclusionary right rests with the *patentee. See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent.") Not all parties with some interest in the patent are necessarily entitled to enforce it through the federal courts:

> There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit.

*Morrow*, 499 F.3d at 1339. Plaintiffs in the first category hold all or substantially all rights to the patents. *Id.* at 1340. Plaintiffs in the third category lack any exclusionary rights and therefore are not "*injured* by a party that makes, uses, or sells the patented invention." *Id.* at 1341 (emphasis added). Plaintiffs in the second category, however, occupy a middle ground. Often referred to as "exclusive licensees," these plaintiffs hold some exclusionary rights and therefore are entitled to join the patent owner in enforcing those rights. *Id.* at 1340; *see also Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1292 (Fed. Cir. 2007) ("In order for a licensee to have co-plaintiff standing, it must hold at least some of the *proprietary* rights under the patent." (emphasis added)). The dispute in this case is whether adidas America falls into the second or third category.

The bulk of the Defendants' motion makes a factual attack on adidas America's standing. But the Defendants also point to specific language in the amended complaint in support of a facial challenge. In particular, the amended complaint states that "adidas AG is the owner by assignment of all right, title, *and interest* in and to" each of the asserted patents. (D.I. 44, ¶¶ 11–

23 (emphasis added).) The Defendants contend that, if adidas AG truly holds *all* the interests in the asserted patents, then adidas America cannot have any proprietary interest to satisfy its own standing. Elsewhere in the amended complaint, however, the Plaintiffs clearly allege that adidas America "is the exclusive licensee in the United States for each of the" asserted patents. (*Id.* ¶ 24.) While the Defendants view these statements as inconsistent and grounds for dismissal, the court agrees with the Plaintiffs that alleging that adidas AG *owns* all "right, title, and interest" in the patents does not make it impossible for adidas America to have an exclusive licensee to use some of those rights. Under the "more generous standard of review associated with" a facial attack, the Plaintiffs' amended complaint adequately alleges adidas America's standing.

Turning to the Defendants' factual challenge, the court "look[s] beyond the pleadings to ascertain" whether the facts of the case—in reality—support the jurisdictional allegations of the complaint. *See Aichele*, 757 F.3d at 358. The court finds that the Plaintiffs have failed to carry their burden to establish that adidas America has standing as a co-plaintiff in this action.

First, it is important to note that the Plaintiffs have never made a showing that the patents-in-suit were the subject of the numerous contractual agreements among the adidas entities. The patents that were the subject of the original Licensing Agreement between adidas AG and adidas IT were never identified by number, only by their associated commercial embodiments. (D.I. 47, Ex. 7, Ex. B.) Among these embodiments is the adidas miCoach product, the apparent competitor product to the Defendants' accused products.[2] But strangely, the Plaintiffs have never made any attempt to link the asserted patents to the miCoach product. Therefore, if it accepts (for the moment) that the described series of agreements succeeding in making adidas America an exclusive licensee to the intellectual property identified in the

---

[2] The court is forced to infer this from the briefing. The adidas miCoach product is never mentioned in the complaint or any of its amendments.

Licensing Agreement, the court is left only with the conclusion that adidas America is the exclusive licensee to the miCoach patents (in addition to the other named products' patents). What these patents are, the court cannot say.

From what the court can tell, the Plaintiffs looked at the accused products, identified the adidas patents they believed read on the accused products, and then simply assumed those patents are the same for the miCoach product. The Plaintiffs are not permitted to work backwards from the accused infringing products to satisfy their burden of establishing standing. The Plaintiffs make the conclusory statement that "[t]here is no dispute that [the licensing agreements] include[] the asserted patents, which relate to adidas America's 'miCoach' products." (D.I. 52 at 4.) This is not true. The Defendants have never made such an acknowledgment. (D.I. 47 at 9 n.3 ("If one assumes that that the adidas MiCoach product embodies the inventions covered by the Asserted Patents (*which Plaintiffs have not established*) . . . ." (emphasis added)); D.I. 57 at 3 n.3.)

The Plaintiffs bear the burden of establishing that jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Sicom*, 427 F.3d at 976. As a preliminary matter—before the court even gets to the question of what *type* of interest adidas America may hold—the Plaintiffs must prove that adidas America holds some interest in the patents *actually asserted*. The Plaintiffs have made no showing that the asserted patents are tied to the adidas miCoach product, or any other product for that matter. It is not the court's role to fill in gaps, which the Plaintiffs may consider obvious inferences. Rather, the Plaintiffs must come forward with evidence to overcome the presumption that jurisdiction is lacking. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies

outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)). They have not done so.

Notwithstanding the Plaintiffs' failure to tie the asserted patents to any of the contractual agreements, the court agrees with the Defendants that the most recent Reebok Agreement resolves the issue definitively. The Reebok Agreement explicitly terminated the effectiveness of the previous Distribution Agreement and, by extension, the provisions of the Clarification Agreement purporting to explain the Distribution Agreement. (D.I. 57, Ex. A at 2, ¶ F.) Critically, the Reebok Agreement appointed both adidas America and Reebok as the exclusive distributors for adidas products in the United States.[3] (Id. § 2.1.) As a result, adidas America "does not possess the requisite exclusive right to sell" products made according to the asserted patents, necessary to qualify it as an exclusive licensee. See Mitutoyo, 499 F.3d at 1291. The Federal Circuit's analysis in Mitutoyo is highly convincing:

> Mitutoyo [plaintiff] and MAC [putative co-plaintiff] contend that MAC has standing because it is the exclusive distributor of Mitutoyo products in the United States. This argument, however, misunderstands the relevant inquiry. In order for a licensee to have co-plaintiff standing, it must hold at least some of the proprietary rights under the patent. Consequently, the pertinent question is whether MAC has the exclusive right to sell products made according to the '902 patent in the United States; the exclusive right to sell only Mitutoyo's products made according to the '902 patent, however, is not a sufficient basis for standing. Because Mitutoyo represented to the trial court that General Tool Corp. imports products covered by the '902 patent and has the right to sell them in the United States, MAC does not possess the requisite exclusive right to sell.

Id. Even if the court were to accept the Plaintiffs' assertion—outlined in the Clarification Agreement—that "exclusive distributor" actually meant "exclusive licensee," the Reebok

---

[3] Oddly enough, the Reebok Agreement uses the same language of the original Distribution Agreement—focusing on *distribution* rather than exclusive licensing—even after the Clarification Agreement attempted to explain what was really meant by the arguably unclear language.

Agreement conclusively demonstrates that adidas America is not the exclusive seller of products made according to the asserted patents. *See id.* Thus, adidas America's interest is not exclusionary. Although the Reebok Agreement was executed after adidas America joined as a co-plaintiff, the law makes clear standing must exist throughout the pendency of litigation. *See Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319 (Fed. Cir. 2008) ("One commentator has defined mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980))). adidas America falls into the third category of patent plaintiffs and lacks standing to sue. *Morrow*, 499 F.3d at 1339.[4]

## V. CONCLUSION

For these reasons, the Defendants' motion to dismiss for lack of subject matter jurisdiction (D.I. 46) is granted. adidas America is dismissed for lack of standing.

Dated: June 15, 2015

UNITED STATES DISTRICT JUDGE

---

[4] The court made several assumptions about the legal effect of the Licensing Agreement, the Distribution Agreement, and the Clarification Agreement in reaching its decision. But in light of the its more narrow ruling, the court declines to address the parties' remaining arguments concerning the proper interpretation of these agreements, which likely would have required the application of foreign law. The Plaintiffs' Notice and Motion for Application of German and Dutch Law (D.I. 50) is denied as moot.