# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADIDAS AG, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) C.A. No. 14-130-GMS |
|   v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| UNDER ARMOUR, INC. and | ) |
| MAPMYFITNESS, INC., | ) |
| | ) |
|       Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY PURSUANT TO 35 U.S.C. § 112

OF COUNSEL:

Brian E. Ferguson
Anish Desai
Robert T. Vlasis
David M. DesRosier
Christopher Marando
Sutton W. Ansley
Zachary Garthe
Stephen Bosco
WEIL GOTSHAL & MANGES, LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 682-7000

Dated: February 4, 2016
1215707 / 41293

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteraderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Under Armour, Inc. and MapMyFitness, Inc.*

# TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT .................................................................................. 1
II. FACTUAL BACKGROUND ............................................................................................. 1
III. LEGAL STANDARDS ...................................................................................................... 2
IV. ARGUMENT ...................................................................................................................... 3
    A. The Asserted Claims Of The 867 Patent Are Directed To Both An Apparatus And A Method Of Using It ..................................................................... 3
    B. The Intrinsic And Extrinsic Evidence Demonstrates That The Asserted 867 Patent Claims Include Method Steps .............................................................. 6
V. CONCLUSION ................................................................................................................... 9

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aventis Pharma S.A. v. Hospira, Inc.*,
  743 F. Supp. 2d 305 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012)..........................5, 8

*Forest Labs., Inc. v. Abbott Labs.*,
  239 F.3d 1305 (Fed. Cir. 2001)..................................................................................................8

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005)..............................................................................................2, 5

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011)......................................................................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014)................................................................................................................2

*Rembrandt Data Technologies, LP v. AOL, LLC*,
  641 F.3d 1331 (Fed. Cir. 2011)..............................................................................................1, 2

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015)..................................................................................................8

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015)..................................................................................................................2

*UltimatePointer, LLC v. Nintendo Co.*,
  73 F. Supp. 3d 1305 (W.D. Wash. 2014)...................................................................................5

**Statutes & Rules**

35 U.S.C. § 112...........................................................................................................................1, 2, 9

Fed. R. Civ. P. 56..............................................................................................................................1

D. Del. LR 7.1.3................................................................................................................................1

Pursuant to the Court's January 21, 2016 Order (D. I. 202), Fed. R. Civ. P. 56 and Local Rule 7.1.3, Defendants respectfully move the Court for summary judgment of invalidity of the asserted claims of U.S. Pat. No. 7,292,867 ("the 867 Patent").[1] The asserted claims of the 867 Patent are each invalid for indefiniteness under 35 U.S.C. § 112.

## I. SUMMARY OF THE ARGUMENT

Claim language directed to "both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2." *Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (citation omitted). Such "hybrid" claims are indefinite because they create uncertainty as to whether infringement requires use of the apparatus in the manner recited in the claims, or whether mere making or selling of the claimed apparatus constitutes infringement. Here, the language of the asserted claims creates precisely this ambiguity regarding the scope of infringement, and each asserted claim of the 867 Patent is consequently indefinite.

## II. FACTUAL BACKGROUND

The application that led to the 867 Patent was filed on January 16, 2004, and claims priority to a provisional application filed on January 16, 2003. *See* Exh. 1. The same applicants filed an application claiming priority to the 867 Patent on September 19, 2007, which ultimately issued as U.S. Pat. No. 7,805,149 ("the 149 Patent").[2]

Fact and expert discovery in this case are closed, and the Court issued its Claim Construction Order on June 15, 2015. D. I. 161. The Court expressly excluded indefiniteness

---

[1] The 867 Patent is attached to the Declaration of Brian Ferguson filed concurrently herewith (Ferguson Decl.) as Exhibit 1.

[2] The 149 Patent is attached to Ferguson Decl. as Exhibit 2.

issues from the claim construction briefing and, in its January 21, 2016 Order (D. I. 202), authorized Defendants to file the instant motion and related briefing.

### III.     LEGAL STANDARDS

Paragraph 2 of (pre-AIA) 35 U.S.C. § 112 mandates that a patent applicant "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2000). As the Supreme Court clarified in 2014, a patent claim is invalid for failure to comply with this requirement if, viewed in the context of the patent's specification and prosecution history, it fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). In establishing this "reasonable certainty" standard, the Court overruled prior Federal Circuit cases suggesting that claims were indefinite only if they were "insolubly ambiguous" or "not amenable to construction." *Id.* at 2130.

Even under the more exacting indefiniteness standard that preceded *Nautilus*, the Federal Circuit repeatedly held that claim language "'reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2.'" *Rembrandt*, 641 F.3d at 1339 (quoting *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)). A claim drafted in this manner "is not sufficiently precise to provide competitors with an accurate determination of the metes and bounds of protection involved and is ambiguous and properly rejected under section 112, paragraph 2." *IPXL*, 430 F.3d at 1384 (quotations and citations omitted).

Claim indefiniteness, like other aspects of claim construction, is a question of law that may be influenced by extrinsic factual determinations. *See generally Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). Although patent invalidity generally must be proven

by clear and convincing evidence, that standard applies only to underlying questions of fact, not to ultimate questions of law. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 (2011) ("I write separately because, given the technical but important nature of the invalidity question, I believe it worth emphasizing that *in this area of law as in others the evidentiary standard of proof applies to questions of fact and not to questions of law*.")[3]

## IV. ARGUMENT

### A. The Asserted Claims Of The 867 Patent Are Directed To Both An Apparatus And A Method Of Using It

The three asserted claims of the 867 Patent—claims 17, 18, and 23— all depend from independent claim 16, which is reproduced below:

> A computer readable medium encoded with a computer program for controlling a mobile phone configured as a portable fitness device, said computer readable medium comprising:
>
> a data processing system-usable medium including:
>
> first instructions *that cause* said mobile phone, responsive to receiving a plurality of global positioning system (GPS) time-stamped waypoints *within a route of a fitness activity*, *to determine* athletic performance information at multiple of the plurality of waypoints, said athletic performance information including athletic performance information indicative of velocity and at least some of said athletic performance information being determined from the waypoints; and
>
> second instructions *that cause said mobile phone to automatically transmit* the plurality of waypoints within the route and at least a portion of said athletic performance information to a remote recording device via a wireless wide-area communication network *during traversal of the route*.

Exh. 1 at 19:1-20. The parties do not dispute that the "computer readable medium" recited in the preamble to claim 16 is an apparatus—the only dispute is whether subsequent claim language defines that apparatus in terms of its capabilities, as Plaintiff will certainly argue, or can be reasonably read to require use of the claimed apparatus, as Defendants contend. *See* D.I. 197 at

---

[3] All emphasis herein is added unless otherwise noted.

3

5. The claim language highlighted above, read in light of the intrinsic evidence, demonstrates that persons of ordinary skill in the art would be uncertain as to whether claim 16 requires *use* of the claimed computer readable medium.

The plain language of claim 16 requires that a first set of instructions "cause" a mobile phone to "determine" athletic performance, and further requires that the determination occur (1) in response to receiving waypoints and (2) within the route of a fitness activity. The claim also requires that a second set of instructions "cause" the phone to "automatically transmit" waypoints and performance information "during traversal of the route." The claim does not, for example, speak of instructions that "can cause" or are "capable of causing," or that are "for causing" the phone to perform the specified actions. Instead, the plain language of the claims requires that the instructions *in fact* cause the phone to determine athletic performance, with the determination actually occurring within the route of a fitness activity, and that the instructions *in fact* cause the mobile phone to transmit waypoints and performance information "during traversal of the route."

The juxtaposition of these method steps with the undisputed apparatus language preceding them denies persons of ordinary skill the reasonable notice of claim scope that the law of definiteness commands. As a result of this ambiguous claiming, it is unclear to an ordinary artisan whether a "computer readable medium" that is capable of causing a mobile phone to carry out the determining and transmitting steps recited in the claims—*but is in fact never used in such a manner*—falls within the scope of the claim. Adding further confusion, the claims also specify that the recited actions occur "within the route of a fitness activity." This element is an intended use of the claimed apparatus, rather than a structural limitation, and renders it unclear

4

whether an apparatus otherwise meeting the limitations of claim 16—but that is never used "with the route of a fitness activity"—is covered by the claim.

This is no mere academic exercise. As the Court is aware, the products at issue in this case are software applications that users download to smartphones. A significant percentage of those who download the applications, however, *never actually use them*. As a result, the question of whether a user's act of downloading an application is itself an act of direct infringement, or whether direct infringement requires actual use of the application in an infringing manner, is tremendously important to an application producer's total potential liability (not to mention to the users themselves, who presumably have a right to reasonable certainty as to whether the mere act of downloading an application opens them up to a patent infringement suit).

As a result of the ambiguous language in claim 16, it "suffer[s] from precisely the lack of clarity that drove the Federal Circuit's decision in *IPXL Holdings—i.e.,* it is not clear when the mixed subject matter claim would be infringed." *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 329 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012). The claim language here is similar, moreover, to claim language that a different district court found indefinite as directed to both an apparatus and a method for using it. *See UltimatePointer, LLC v. Nintendo Co.*, 73 F. Supp. 3d 1305, 1308 (W.D. Wash. 2014) (finding that claim language directed to "a handheld device including: an image sensor, said image sensor generating data...." was indefinite because it "set forth both an apparatus—a handheld device including an image sensor—and a use for the apparatus—'generating data'"). Much as the claim language in *UltimatePointer* required actual generation of data, the plain language of claim 16 requires instructions that actually cause a phone to determine and transmit information "during traversal of the route."

5

Although the above ambiguity in independent claim 16 is alone sufficient to render each asserted claim of the 867 Patent invalid for indefiniteness, the language of asserted claims 17 and 18 further compounds the confusion and creates additional bases for invalidity. Claim 17, for example, states that "the first instructions determine at least a portion of said athletic performance information utilizing said elevation information." Ex. 1 at 19:24-26. Claim 17 thus discards even the "cause…to determine" language of claim 16 and flatly requires that the instructions "determine" athletic performance information—an unambiguous method step. Claim 18 adds additional method steps by requiring "third instructions *that receive*…route information" and fourth instructions that "*cause* said mobile phone *to present* said route information," which leads to confusion regarding whether the claim is infringed if no route information is in fact ever received or presented. Ex. 1 at 19:29-34. Claim 23 is indefinite at least because it depends from claim 16.[4]

### B. The Intrinsic And Extrinsic Evidence Demonstrates That The Asserted 867 Patent Claims Include Method Steps

That the patentee was well aware of how to use functional language when so desired is further confirmed by the prosecution history and issued claims of the related 149 Patent. The outcome of this motion ultimately depends on whether the Court determines that claim language describing instructions "that cause" specified actions can be construed to mean "capable of causing." The prosecution history of the 149 Patent shows that such a construction should be foreclosed.

---

[4] In addition, by referring to "fifth instructions *to* cause….the mobile phone to transmit" (Ex. 1 at 20:25-26) rather than fifth instructions "*that* cause" the transmission, claim 23 shows that the patentee knew how to include language that (if somewhat awkwardly) describes a functional purpose, rather than requiring that a particular action occur.

6

The application that issued as the 149 Patent is a continuation of the application that issued as the 867 Patent. *See* Exh. 2. It was filed on September 19, 2007 (while the 867 Patent was still pending), and the original claims filed used the same "instructions that cause…" language that appears in the 867 Patent. As the excerpt from the 149 Patent file history below demonstrates, however, the applicants chose to remove this language in the course of a December 4, 2009 response to the examiner's rejection of the claims:

> Reply to 12/04/09 Office Action - 6 - Jon H. WERNER
> Appl. No. 11/857,862
>
> first instructions ~~that cause said~~ capable of causing the mobile phone, responsive to receiving data describing global positioning system (GPS) time-stamped waypoints within a route of a fitness activity, to determine athletic performance information ~~therefrom~~ associated with multiple of the waypoints;
>
> second instructions ~~that cause said~~ capable of causing the mobile phone to automatically transmit ~~said~~ at least some of the data describing the waypoints and at least some of the athletic performance information to a remote recording device via a wireless wide-area communication network ~~during a fitness activity~~; and
>
> third instructions ~~that process~~ capable of causing the mobile phone to process communication received ~~over-the-air said~~ from the wireless wide-area communication network.
>
> 11. (Currently Amended) The program product of claim 10, wherein:
>
> said third instructions ~~receive~~ are capable of causing the mobile phone to process route-related information received from the wireless wide-area network; and
>
> said first instructions are capable of causing the mobile phone to determine at least ~~a portion~~ some of ~~said~~ the athletic performance information ~~or at least a portion of said route information~~ utilizing ~~said~~ the route-related information.

Ex. 3 at AD-00000390. The amendment—which is reflected in the 149 Patent claims that ultimately issued (*see* Exh. 2 at 18:1-27) —notably dispenses with claim language requiring that instructions "cause" particular actions to occur, and instead replaces them with express statements of capability. For example, whereas claim 10 previously referred to "first instructions

that cause" a mobile phone to determine information, claim 10 as amended is addressed to instructions "capable of causing" the phone to make the determinations. And while claim 11 previously spoke of first instructions that "receive route related information," claim 11 as amended recites third instructions that "are capable of causing the mobile phone to process" received route-related information. In other words the applicants were well aware of how to draft claims expressly directed to capabilities when they wished and, as the Court has held under similar circumstances, their decision not to expressly direct the claims of the 867 Patent toward capabilities should be given full effect. *See Aventis*, 743 F. Supp. 2d at 329 ("Had the patentees wished to state that the composition was merely 'capable of' being formed into a perfusion, they could easily have said so explicitly.").

Patentee actions in the prosecution of related applications, moreover, are highly relevant to the construction of common terms. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 (Fed. Cir. 2015) ("A statement made during prosecution of related patents may be properly considered in construing a term common to those patents, regardless of whether the statement pre- or post-dates the issuance of the particular patent at issue."). Here, the patentee affirmatively replaced language that had been common to both patents (i.e., "instructions *that cause*…") and replaced it with different language ("instructions *capable of causing*…"). Accordingly, persons of ordinary skill in the art reviewing the intrinsic evidence would correctly presume that the patentee's decision to use different claim language reflects a difference in claim scope. *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) ("Where claims use different terms, those differences are presumed to reflect a difference in the scope of the claims.").

This intrinsic evidence confirms that the asserted claims of the 867 Patent are invalid. To the extent the Court would look to extrinsic evidence to better understand how a person of ordinary skill would interpret the asserted claims of the 867 Patent, moreover, all admissible evidence supports Defendants' contention that the claims are improperly directed to both an apparatus and its use. Specifically, Dr. Shawn Burke, an undisputed person of skill in the relevant art, has opined with reference to the steps claimed in independent claim 16 that "it is unclear from the claim language whether a computer readable medium that is merely *capable of* causing these steps to occur, but never in fact does, infringes the claims." Exh. 4 at ¶ 138. After noting that he had been instructed on the law of indefiniteness, Dr. Burke ultimately concluded that "claims 17, 18, and 23 are indefinite for failing to provide reasonable certainty as to whether infringement of the claims requires actual use of the claimed 'computer-readable medium.'" *Id.* at ¶ 137. In contrast, Plaintiff's invalidity expert, Dr. Michalson, expressed no opinion on whether the 867 Patent's claims require use of the claimed apparatus. Accordingly, to the extent extrinsic evidence is relevant to the Court's analysis, it weighs entirely in Defendants' favor and there are no genuine issues of material fact as to how a person of ordinary skill would understand the claims.

Taken together, therefore, the intrinsic and extrinsic evidence show that the asserted claims of the 867 Patent fail to provide the reasonable certainty as to their scope that the law requires. The claims are invalid for that reason.

## V.        CONCLUSION

Defendants respectfully request that the Court grant the instant motion and enter judgment that the asserted claims of the 867 Patent are invalid for failure to comply with the definiteness requirement of 35 U.S.C. § 112.

|  | Respectfully submitted, |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |

OF COUNSEL:

Brian E. Ferguson
Anish Desai
Robert T. Vlasis
David M. DesRosier
Christopher Marando
Sutton W. Ansley
Zachary Garthe
Stephen Bosco
WEIL GOTSHAL & MANGES, LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 682-7000

Dated: February 4, 2016
1215707 / 41293

By: */s/ Bindu A. Palapura*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    bpalapura@potteraderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendants Under Armour, Inc. and MapMyFitness, Inc.*